**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

JACQUELINE ROWE,         §
                       §
      Plaintiff,         §
                       §
v.                     §        CIVIL ACTION NO.  4:22-cv-2153
                       §
THE PRUDENTIAL INSURANCE   §
COMPANY OF AMERICA,      §
                       §
      Defendant.       §

## PLAINTIFF'S ORIGINAL COMPLAINT

### PRELIMINARY STATEMENT

1.     Plaintiff JACQUELINE ROWE, hereinafter referred to as "Plaintiff," brings this ERISA action against The Prudential Insurance Company of America Group Welfare Benefits Plan, in its capacity as Administrator of the KPMG LLP Long Term Disability Plan, hereinafter referred to as "Defendant".  Plaintiff brings this action to secure all disability benefits, whether they be described as short term, long term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant.  Plaintiff is covered under the policy by virtue of her employment with KPMG International.

### PARTIES

2.     Plaintiff is a citizen and resident of Houston, Texas.

3.     Defendant is a properly organized business entity doing business in the State of Texas.

4.     The disability plan at issue in the case at bar was funded and administered

2

by Defendant.

5.      Defendant is a business entity doing business in the Southern District of Texas.  Defendant may be served with process by serving its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## JURISDICTION AND VENUE

6.      This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question.  Specifically, Plaintiff brings this action to enforce her rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7.      Venue in the Southern District of Texas is proper by virtue of Defendant doing business in the Southern District of Texas.   Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2).  Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*)  "District courts within the Fifth Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United States District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979*). See Sanders v.*

3

*State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993).  The

Ninth Circuit, in *Varsic*, concluded that whether a defendant "resides or may be found" in

a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses

personal jurisdiction over the defendant.  *Varsic*, 607 F.2d at 248."  See *Frost v. ReliOn,

Inc.*, 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007).   Under ERISA's

nationwide service of process provision, a district court may exercise personal jurisdiction

over the defendant if it determines that the defendant has sufficient ties to the United

States.  See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan,* 97 F.3d

822, 825-26 (5th Cir. 1996), citing *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11

F.3d 1255, 1258 (5th Cir. 1994).  Here, Defendant is "found" within the Southern District

of Texas, as it does business here, and the court has personal jurisdiction over Defendant,

as it has sufficient ties to the United States.

## **CONTRACTUAL AND FIDUCIARY RELATIONSHIP**

8.    At all relevant times, Plaintiff has been a participant within the meaning of

Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Control

No./Br. 43764 / A0001.

9.    Plaintiff obtained the disability policy at issue by virtue of Plaintiff's

employment with KPMG International, with coverage beginning on October 1, 2008.

10.    Said policy became effective January 1, 2018.

11.    At all relevant times, Defendant has been the claims administrator of the

disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. §

1002(16)(A).

12.     At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13.     Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

14.     Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner that is consistent with the interests of the claimant's.

15.     Disability benefits under the Plan have been insured in accordance and pursuant to Control No./Br. 43764 / A0001 issued by Defendant.

16.     Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

17.     Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

18.     Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## STANDARD OF REVIEW

19.     In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

20.     Except as stated in paragraph 21 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review.

5

_Firestone Tire & Rubber Co. v. Bruch_, 489 U.S. 101 (1989).

21.     In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

22.     Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

23.     Further, when a Defendant violates the Department of Labor regulations, Defendant effectively forfeits its discretionary authority.

24.     When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent _and_ harmless. _Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ._, 819 F. 3d 42 (2nd Cir. 2016).  See also _Fessenden v. Reliance Standard Life Ins. Co._, 927 F.3d 998, 1001-02 (7th Cir. 2019) and _Slane v. Reliance Stand. Life Ins. Co._, CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

25.     Defendant committed the following violations demonstrating its failure furnish a full and provide review:

i.      Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);
ii.     Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);
iii.    Failure to follow Defendant's own claims procedures 29 C.F.R. §

6

2560.503-1(b);

iv.    Failure to adopt guidelines to ensure that similarly situated claims are administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);

v.    Failure to administrative Plaintiff's claim consistently 29 C.F.R. § 2560.503-1(b)(5);

vi.    Failure to provide requested relevant documents timely. 29 C.F.R. § 2560.503-1(h)(2)(iii);

vii.    Failure to describe the guidelines and protocols relied upon. 29 C.F.R. § 2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);

viii.    Failure to obtain the review of appropriate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii);

ix.    Failure to obtain an appeal review of a different non-subordinate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(v);

x.    Failure to obtain an appeal review that does not defer to the prior determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xi.    Failure to obtain an appeal review that is conducted by a different non-subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xii.    Failure to give a claimant an opportunity to review and refute the report of a reviewing physician obtained during the appeal review. 29 C.F.R. § 2560.503-1(h)(4);

xiii.    Failure to take into account all comments, documents, records, and other information submitted to the claimant or by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

26.    Defendant's violations of the regulations were not inadvertent or harmless.

27.    Plaintiff contends that because Defendant failed to furnish a full and fair review, Defendant has relinquished its discretionary authority under the Plan.

28.    Further, Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

29.    In Texas, for disability insurance policies, certificates or riders offered, issued, renewed or delivered on or after February 1, 2011 said "discretionary clauses" are prohibited under 1701.062(a) Texas Insurance Code.

30.    Further, for disability insurance policies issued prior to February 1, 2011 that do not contain a renewal date, said discretionary clause prohibition applies after June 1,

7

2011 upon any rate increase or any change, modification or amendments on or after June 1, 2011.

31.     Plaintiff contends that the Plan fails to give the Defendant said discretion as said discretionary language is prohibited under 1701.062(a) Texas Insurance Code.

32.     Pursuant to *Ariana M. v. Humana Health Plan of Texas*, 884 F.3d. 246, 249 (5th Cir. 2018), (overruling *Pierre v. Conn. Gen. Life Ins. Co.*, F2d. 1562 (5th Cir. 1991), the 5th Circuit has recently held that absent a valid grant of discretion, both the "interpretation of plan language" and "factual determinations" are to be reviewed by the court under a de novo standard.  Therefore, pursuant to *Ariana*, the court should review this matter de novo.

33.     ERISA does not preempt state bans on discretionary clauses because of the "savings clause."  ERISA preempts "any and all State laws insofar as they … relate to any employee benefit plan."  The "savings clause," however, preserves "any law … which regulates insurance…".  To fall within the savings clause, a state law must: Be "specifically directed toward entities engaged in insurance" and "substantially affect the risk pooling arrangement between the insurer and the insured."  *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).

34.     Defendant's discretionary ban is therefore not preempted by ERISA and the Standard of Review for the Court in reviewing this action is de novo.

## **ADMINISTRATIVE APPEAL**

35.     Plaintiff is a 56-year-old woman previously employed by KPMG International as a "Senior Administrative Assistant."

36.     Senior Administrative Assistant is classified under the Dictionary of Occupational Titles as having a Sedentary exertional level. This occupation also has an SVP of 7 and is skilled work.

37.     This occupation was very demanding in that it required Plaintiff to assist senior managers and executives with their daily organizational tasks, arrange meetings and attend them to take detailed minutes, perform travel arrangements and reservations for senior managers, manage phone calls, schedule appointments and organize calendars..

38.     Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on March 2, 2018.

39.     Plaintiff alleges that she became disabled on March 5, 2018.

40.     Plaintiff filed for short term disability benefits with Defendant.

41.     Short term disability benefits were approved and paid from March 5, 2018 to September 4, 2018.

42.     Plaintiff filed for long term disability benefits through the Plan administered by the Defendant.

43.     The Plan defines "Disabilities" as follows:

"Disabilities which, as determined by Prudential, are due in whole or part to mental illness have a limited pay period during your lifetime.

The limited pay period for mental illness is 24 months during your lifetime.

…Mental illness means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive or bipolar illness, anxiety, somatization, substance related disorders and/or adjustment disorders of other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as

9

standardly accepted in the practice of medicine."

44.     The Plan defines "Regular Occupation" as follows:

*"Regular Occupation" means the occupation you are routinely performing when your disability occurs. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.*

45.     The Plan defines "Gainful Occupation" as follows:

*"Gainful Occupation" means an occupation, including self-employment, that is or can be expected to provide you with an income equal to at least 60% of your indexed monthly earnings within 12 months of your return to work.*

46.     Long Term Disability benefits were approved from September 5, 2018 to August 31, 2020.

47.     The Plan provides for monthly benefits of $2,830.00.

48.     On August 13, 2020, Defendant terminated Plaintiff's long term disability benefits.

49.     Defendant's termination letter said, "…we find Ms. Rowe is not disabled and not eligible further benefits under the plan beyond August 31, 2020." under the Any Occupation definition and allowed Plaintiff 180 days to appeal this decision.

50.     Defendant's termination letter failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of her own or any occupation related to her medical conditions.

51.     Defendant's termination letter failed to state what specific information was missing and/or necessary for Plaintiff to perfect her appeal.  On this front, Defendant's letter states only that, "If there is additional information, documents, or records that you

believe would impact this benefit decision please submit it to us for consideration."

52.     On February 9, 2021, Plaintiff pursued her administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

53.     Plaintiff timely perfected her administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

54.     Plaintiff submitted additional information including medical records to show that she is totally disabled from the performance of both her own and any other occupation as defined by the terms of the Plan.

55.     Additionally, the Social Security Administration issued a fully favorable decision on Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act, finding that Plaintiff is "disabled" during the relevant time period. Notably, the SSA's definition of disability is significantly more restrictive than Defendant's as SSA requires the claimant to be unable to work in "any occupation in the National Economy."

56.     Defendant was provided documentation of the Social Security Administration's finding that Plaintiff was found to be totally disabled under Title II and Title XVI of the Social Security Act.

57.     On or about November 14, 2018, Defendant's internal consultant, Kevin Hayes, M.D. (Dr. Hayes), psychiatry, performed a paper review of Plaintiff's claim file.

58.     On or about December 30, 2019, Defendant's paid consultant, Nasreen Malik, M.D. (Dr. Malik), psychiatry, performed a peer review of Plaintiff's claim file.

59.     On or about March 17, 2020, Dr. Hayes performed another peer review of Plaintiff's claim file.

11

60.     On or about March 25, 2020, Dr. Malik performed another peer review of Plaintiff's claim file.

61.     On or about April 13, 2020, Defendant's internal consultant, Edward Collins, M.D., performed a paper review of Plaintiff's claim file.

62.     On or about April 23, 2020, Defendant's internal consultant, Richard Day, M.D., FAAPMR (Dr. Day), performed a paper review of Plaintiff's claim file.

63.     On or about August 13, 2020, Dr. Day performed another paper review of Plaintiff's claim file.

64.     On or about March 10, 2021, Defendant's paid consultant, Timothy D. McManus, Psy.D. ABPP-RP (Dr. McManus), psychology, neuropsychology, and rehabilitation psychology, performed a peer review of Plaintiff's claim file.

65.     On or about May 19, 2021, Dr. McManus performed another peer review of Plaintiff's claim file.

66.     On or about January 19, 2022, Dr. McManus prepared an addendum to his peer reviews of Plaintiff's claim file.

67.     On or about January 19, 2022, Defendant's paid consultant, Victoria T. Zvonkina, M.D., neurology, performed a paper review of Plaintiff's claim file.

68.     Defendant's peer reviews of Plaintiff's file are unreliable and unreasonable as a basis for denial because:

a.      The reviewers' opinions were infected by conflict and bias;

b.      The reviewers' conclusions lack foundation and are conclusory;

c.      The reviewers failed to consider the degenerative nature of Plaintiff's

12

condition(s) and the lack of significant improvement;

d.    The reviewers lacked appropriate qualifications to comment on Plaintiff's conditions;

e.    The reviewers never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f.    The reviewers failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g.    The reviewers failed to acknowledge that medications neither effectively resolved her pain nor were appropriate for long-term treatment of Plaintiff;

h.    The reviewers based their opinions on a summary reports of other underqualified opinions; and

i.    The reviewers' conclusions were inconsistent with the weight of the evidence.

69.    There is an indication that a "Nora Bargfrede, RN," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

70.    There is an indication that a "Suzie Borelli, RN," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

71.    There is an indication that a "Cristi Calloway," performed a vocational review of Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

72.    There is an indication that a "Ashley Phair, RN, BSN," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

73.    There is an indication that a "Marc Quinatana, RN," reviewed Plaintiff's

claim file, but Defendant failed to provide Plaintiff with said review.

74.     Defendant's consultants completed their reports without examining Plaintiff.

75.     On October 24, 2018, Defendant paid its expert, Adriana M. Strutt, Ph.D., ABPP-CN (Dr. Strutt), clinical neuropsychology, to conduct a defense medical examination "DME" on Plaintiff.

76.     This examination was unreliable and not "independent" as evidenced by:

a.     Dr. Strutt's opinion was infected by conflict and bias;

b.     Dr. Strutt's conclusions lack foundation and are conclusory;

c.     Dr. Strutt failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

d.     Dr. Strutt lacked appropriate qualifications to comment on Plaintiff's conditions;

e.     Dr. Strutt failed to spend an adequate amount of time examining Plaintiff, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f.     Dr. Strutt failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g.     Dr. Strutt failed to acknowledge that medications neither effectively resolved her pain nor were appropriate for long-term treatment of Plaintiff;

h.     Dr. Strutt based her opinion on a summary reports of other underqualified opinions; and

i.     Dr. Strutt's conclusions were inconsistent with the weight of the evidence.

77.     Defendant notified Plaintiff that Defendant upheld its original decision to terminate Plaintiff's claim for long term disability benefits.

78.     Defendant also notified Plaintiff that Plaintiff had exhausted her administrative remedies.

79.     Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on her ability to engage in work activities.

80.     Plaintiff has now exhausted her administrative remedies, and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## **MEDICAL FACTS**

81.     Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

82.     Plaintiff suffers from post-concussion syndrome (PCS) as a result of a traumatic brain injury (TBI); post-traumatic stress disorder (PTSD); panic attacks; major depressive disorder (MDD); and anxiety.

83.     Treating physicians document continued chronic pain, as well as decreased range of motion and weakness.

84.     Plaintiff's treating physicians have opined that Plaintiff is unable to work.

85.     Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

86.     Plaintiff's multiple disorders have resulted in restrictions in activity, have severely limited Plaintiff's range of motion, and have significantly curtailed her ability to

engage in any form of exertional activity.

87.     Physicians have prescribed Plaintiff with multiple medications, including narcotic pain relievers, in an effort to address her multiple symptoms.

88.     However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

89.     Plaintiff's documented pain is so severe that it impairs her ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, for an 8-hour day, day after day, week after week, month after month.

90.     Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

91.     The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

92.     As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

93.     However, after exhausting her administrative remedies, Defendant persists in denying Plaintiff her rightfully owed disability benefits.

## **DEFENDANT'S CONFLICT OF INTEREST**

94.     At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

95.     Defendant's determination was influenced by its conflict of interest.

96.     Defendant's reviewing experts are not impartial.

16

97.    Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

98.    Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

99.    Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

100.    Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

101.    Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

## COUNT I:

## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132

102.    Plaintiff incorporates those allegations contained in paragraphs 1 through 101 as though set forth at length herein.

103.    Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

a.    Plaintiff is totally disabled, in that she cannot perform the material duties of her own occupation, and she cannot perform the material duties of any other occupation which her medical condition, education, training, or experience would reasonably allow;

b.     Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

c.     Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

d.     Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

## COUNT II:  ATTORNEY FEES AND COSTS

104.    Plaintiff repeats and realleges the allegations of paragraphs 1 through103 above.

105.    By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees.  Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A.     Grant Plaintiff declaratory relief, finding that she is entitled to all past due long term disability benefits yet unpaid;

B.     Order Defendant to pay past due long term disability benefits retroactive to September 1, 2020 through the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C.     Order Defendant to remand claim for future administrative review and

18

continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

   D.  Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

   E.  For such other relief as may be deemed just and proper by the Court.


Dated:  Houston, Texas
   June 30, 2022

           Respectfully submitted,

           MARC WHITEHEAD & ASSOCIATES,
           ATTORNEYS AT LAW L.L.P.


           By:   _/s/ Selina Valdez_____
               Selina Valdez
                 Tex. Bar No. 24121872
                 Fed. I.D. No. 3633062
                 selina@marcwhitehead.com
               Marc S. Whitehead
                 Tex. Bar No. 00785238
                 Fed. I.D. No. 15465
                 marc@marcwhitehead.com
               J. Anthony Vessel
                 Tex. Bar. No. 24084019
                 Fed. I.D. No. 1692384
                 anthony@marcwhitehead.com
               Britney Anne Heath McDonald
                 Tex. Bar. No. 24083158
                 Fed. I.D. No. 2621983
                 britney@marcwhitehead.com

               Madison Tate Donaldson

19

Tex. Bar No. 24105812
Fed. I.D. No. 3151467
madison@marcwhitehead.com
403 Heights Boulevard
Houston, Texas 77007
Telephone: 713-228-8888
Facsimile: 713-225-0940
ATTORNEY-IN-CHARGE
FOR PLAINTIFF,
JACQUELINE ROWE